Judge Coalter.
Zachariah Lewis made his Will, in which, among others, are the following bequests:
“ I lend unto my daughter, Betty Littlepage, one negro " girl, out of those I last bought, during her natural life; « and immediately after her death, the said negro and her “issue, if any, I give to be equally divided among my “ said daughter’s children then living, and their legal rep“resentatives; but, incase they should all die, without “ issue living, in the life time of my son-in-law James Lit *48 “tlepage, then the said slave and her issue to go to the- “ said James Littlepage. All the rest of my slaves and “ personal estate, not herein before disposed of, to be di- “ v^e(* *n^° eight equal parts, one part whereof I give to “ each of my children, to wit, John, &c. (naming seven of “them,) and their heirs forever: the other eighth part I “ lend unto my daughter Betty Littlepage during her nat- “ ural life; and, immediately after her death, I give the “said slaves and their increase, and the said personal “ estate, unto her children, then living, and, in case any “ of them are dead, to their legal representatives; but, in “ case all her children should die in the life time of my “ son-in-law James Littlepage, then the said slaves and “ personal estate to go to him.”
Betty Littlepage had two children by James; to wit, Lewis who died in 1802, without issue, and Mary who intermarried with R. S. Coleman, and is yet alive.
Zachariah Lewis, the testator, died about the year 1765; and James Littlepage shortly after.
Betty Littlepage, his widow, intermarried with Lewis Holladay, by whom she had several children, who are the appellees. She survived her son Lewis, and died in the year 1809. After her death, her husband delivered over the slaves (33 in number,) to the Executor of Zachariah Lewis.
The children of Coleman, to whom he has transferred his interest, are appellants, and alledge that the children of Betty by the second marriage, are not entitled under the Will: (1.) they also alledge that Lewis Littlepage has bequeathed his interest, they don’t say to whom, or in what manner, but that it may become a question whether he could dispose of any right under the Will. The Will of Lewis Littlepage is not in the record.
James Littlepage, by his Will, left all his slaves, not already given by Deed, and a tract of land, to his children by his first marriage.
*49 We thus learn that he had been married, and had children, before his intermarriage with Betty Lewis', and this circumstance tends to shew why the testator Zachariah Lewis did not bequeath to his daughter Betty in fee, as he did to his other married daughters:—he wished her children to take in exclusion of those of James Littlepage by his first marriage.
It will be conceded that the general words of this Will, if the clauses in favour of James Littlepage had not been in it, w ould have extended to all the children of Betty by any marriage; but it is said those clauses shew the testator had not a second marriage in view; that they limit the general words; and therefore the children, by that marriage, are not persons described, and consequently can not take: that, by the wording of those clauses, it appears he intended that all the children who were to take, might, by possibility, die in the life time of James Littlepage.
To this I answer, that all the children of Betty, by whatever husband, are equally near the testator, and may reasonably be presumed to be within the general intent, as they certainly are within the general words of the Will; and if those words are not necessarily restrained by other bequests or expressions in the Will, they must have their full operation. As for instance, if the bequest to James Littlepage would fail, or be obstructed, by permitting those words to retain their common meaning and import, then that bequest would narrow them; but, if the general words extend to all the children, and such bequest is most reasonable, and can well stand with his intentions towards James Littlepage, for what purpose shall we suppose that he did not intend what he expresses? These clauses in favour of James Littlepage do not appear to have been introduced for the purpose of explaining or narrowing the preceding bequests, but were intended, in certain events, to create an estate in him; and therefore I am not satisfied with the propriety of resorting to the phraseology there used in order to impose restrictions on preceding general words, when the interest of the legatee James Littlepage will not be changed *50 thereby, and when no reason for such restriction can be assigned.
it is said that, by these latter words, he evidently intended that none should take except such as might, by possibility, die in the life time of James Littlepage. But this I think will lead us too far: for, let us suppose there had been no child born at the death of James Littlepage, but that a posthumous child of his had afterwards been born,* would such a child have been excluded on the ground that, not being alive at the death of James, he could not by possibility die in his life time?—and what would have become of the estate on the death of Betty, leaving such child, and also children by a second marriage? Would it have gone to the executor of James Littlepage, as a vested interest in him, transmissible, and passed under his Will to his children by a former marriage? or would it have resulted back to the estate of Z. Lewis the testator? and all this notwithstanding she left not only a child by James Littlepage, but other children, at her death? Or would it have gone to this posthumous child, in exclusion of those by the second marriage, altho’ that child was no nearer to Betty, nor to the testator* than the others, and could not, any more than the others, have died in the life time of James? Or, let us suppose that all the children by James Littlepage had died before their mother, without issue living, and that she had then died leaving the appellees her children; could either the Executor of James Littlepage, or of Z. Lewis, have recovered these slaves from them, as not being persons described, altho’ they were her children, alive at her death?
The testator looked, in the first place, to the death of Ms daughter Betty, who had the life estate, and to the situation of her family at that time. Her childx*en then alive &c. were to take in that event. But there was another event to which he also looked .--these children might all die, without leaving children alive, before James, and then he is to. take. But he was not intended to take, except in this double event; that is, he must survive the tenant for life, and also her children; for, on his death before her and them, the legacy as to him must lapse; so that the construction given to the Will, as between the two classes *51 of children, can have no effect on his interest; and, consequently, these clauses can not, in that respect, affect the construction of the preceding general clause.
The case of Jones v. Morgan (Fearne 330,) so much relied on, was the case of a devise limiting over a reversion expectant on a settlement, in tail male, on the issue male of the testator by his then wife. She was alive, and contemplated as surviving the testator, since she was made a Guardian of his children and an Executor of his "Will. The question arose on these words in the Will;— “ and forasmuch as it is my Will, intent and meaning i( that, in case my said two sons now living, or any other “ son or sons of mine lawfully begotten, hereafter to be “ born, should die without issue male of their bodies, &c. “ that then all and singular my messuages, lands, &c. 6i in &c.” (being the same lands settled,) ie shall be de- “ vised, settled, &c.;” going on to make the limitation over; and the question was, whether the testator meant sons by any future wife; which intention, unless an estate tail could be raised to them by implication, would defeat the limitation over, there being no particular estate to •support such future devise. It was determined that sons by a future marriage were not intended; and, if they had been intended, no estate tail could be raised to them, and so the limitation would have been defeated. This was well determined; first, because such construction of a Will ought to be made, if possible, that every clause and limitation shall have effect; and hence it becomes necessary that general words, which otherwise would defeat the whole intention of the Will, must have bounds put to them: secondly, it was not the object of the testator to devise to his sons, and that by implication, an estate in the lands in tail male, which they already had by the settlement; but the object was merely to limit over the reversion expectant in the testator, if the sons by that marriage should die without issue male; the idea therefore of an implied devise to the sons either of that or any other marriage; was very properly rejected, from the manifest object of the Will itself, and for this farther reason, that the testator clearly appeared not to contemplate a *52 future marriage, but the event of lus then wife surviving him.
I do not see how the testator, in the case before us, if "ie *ia(* foreseen the precise events that have taken place, and bad intended all the children to take, could well have provided therefor by more apt words than he has used; and, when the justice and reasonableness of the caséis with this exposition, I must be excused for not losing sight of those beacons, when, in my judgment, no rule of lavr or of sound interpretation interposes.
As to the rights of Lewis Littlepage, I understand the parties on both sides to admit that, according to his Will, there will be little difference between them, be the decision either way. As, however, that Will is not before us, nor do I know who the parties claiming under it are, I will merely state my present impressions, which are that, (as I understand he died before his mother without issue,) the legacy never vested in him, and that he had nothing to bequeath. I am therefore for affirming the decree, but without prejudice to any claim, which may hereafter be asserted, by parties not now before the Court, under the Will of Lewis Littlepage.
Judge Cabem. was of the same opinion.
Judge Brooke.
Whether the Will in this case is susceptible of the meaning attributed to it by the Chancellor will depend on a correct construction of the two clauses set out in the Bill, in connection with the first clause, in which the testator declares his intention to dispose of his whole estate. It would not be contended, I presume, that, by the devises to his daughter Betty and her children, considered exclusively of any other part of the Will, the testator intended to exclude any of her children living at her death. The words are, “ I lend « to my daughter Betty Littlepage one negro girl, out of “ those I last bought, during her natural life; and, im- « mediately after her death, the said negro and her issue, « if any, I give to be equally divided among my said « daughter’s children then living, and their legal repre- « sensatives.” This last expression certainly comprehends all the children of Betty, in exclusion of none *53 living at the time of her death. The words import, as strongly as possible, the intention of the testator to provide for his daughter Betty and all her children living at.her death. Nor are they to be affected by any criticism on the expression, “ my daughter Betty Littiepage.” It was the name she then bore. Names are only the indicia of persons; and the inference attempted to be drawn from the grammatical relation of the words, “ immediately after her death,” to the words, “ my daughter Betty Littlepage,” whereby to restrict the devise to the children of Betty Littlepage, eo nomine, would be too nice to be permitted to control the general meaning of the sentence. Nor would it be strictly grammatical. The relative “ her” is a personal pronoun:—it is identical, and not nominal in it’s meaning, and refers to the person Belly Littlepage, by whatever name she might afterwards be called. It was his daughter Betty and her children, and their issue, then, that the testator meant to provide for.
This construction, however, is supposed to be overthrown by the devise over, to James Littlepage the husband, in the following words;—<•' but, in case they” (meaning the before named devisees,) “ should all die “ without issue, living in the life time of my son-in-law' e< James Littlepage, then the said slave and her increase “ to go to the said James Littlepage. The argument is, that the testator certainly intended to include the children of James Littlepage only, in the previous member of the clause, because it would bo absurd to suppose that he meant to postpone the devise to him, until the death of Betty his wife, and of her children by a second marriage. The answer I think is, that no such intention is insisted on. The event on which James Littlepage was to take, is plainly declared in the clause to be on the death of Betty, and all her children, and their issue, in his life time; an event very possible, and not altogether improbable. If his wife Betty had died in his life time, without children, or their issue, living, his contingent interest would immediately have vested. But the event, *54 on which the property was to pass to the children and their issue, was a very distinct one:—it was on the death of their mother Betty. Nor is there any conflict between their interest, under this exposition of the Will, and the interest of James Littlepage the husband. On the contrary, if the construction contended for is adopted, some of the children of Betty living at her death must be excluded. This would violate the obvious meaning of the general words in the first member of the clause, without affording the slightest aid to effectuate the intention of the testator declared in the devise over to James Little-page, and impair the general rule, that none of the words in the Will shall be rejected, unless to effectuate the obvious intention of the testator declared in some other part of the Will. This exposition I think equally applies to the other clause, in which one eighth part of the property previously purchased is devised to Betty and her children. Though the expression, “ but, in cáse they •« shall all die without issue,” in the clause before referred to, is omitted, and the expression, “ and, in case « any of them are dead, to their legal representatives,” substituted; it is not believed the testator intended a different disposition of the property. He intended, in both cases, to provide for the children of Betty, and their issue, living at her death:'—lie could not therefore intend to provide for those who might claim in the character of legal representative of any of the children who may have died without issue in her lifetime. There is nothing in the Will from which to infer, that the testator intended to provide for the children of the marriage, of James Littlepage with his daughter Betty; or that he was under any obligation so to provide. If there was, a different construction perhaps ought to prevail. On the contrary, it appears by the Will, that he had made a similar provision for all his daughters; with the exception that there is no limitation over to the husband of any of them, (except to the husband of Betty,) either of the property previously given to them, or of that bequeathed to them by ;he Will; and, the more forcibly to evince his intention *55 to make their parts of his estate equal, he gives to Ms daughters Belly and Dorothea forty pounds more, in the division of the personal estate, than to the others;—“ in « order (as he says,) to make each of my daughters’ parts (( of my estate equal:”—by wliich provision, he certainly intended that the portion of his daughter Betty and her children, in exclusion of none of them living at her death, should he as ample, both in interest and amount, as that of his other daughters and their children. The circumstance, that the parts of the other daughters would belong to their husbands by virtue of their marital rights, does not affect this view of the Will. It only serves to place it in a stronger light; because it shews that the testator, though willing to confide the provision for his other daughters and their offspring, to their husbands, was determined to take care of his daughter Betty and her offspring himself; from which it is not possible to infer a preference of the children of James Littlepage to those of any other marriage. A different exposition would also be in hostility to the first clause in the Will, in which the testator declares Ms intention to dispose of his whole estate; which intention he carries into effect by apportioning Ms property among his wife and all Ms children:—because, if the children of the second marriage of his daughter Betty are to be excluded, (as is contended,) the portion devised to her, in the event that all the children by the first marriage had died in her life time, would have returned to the Executor, as undisposed of by the testator; a result in manifest opposition to the intention of the testator to make the portions of all Ms daughters, equal in interest and amount; and, also, to his intention, declared in the first clause, to dispose of his whole estate; and in direct violation of Ms intention to provide for Ms daughter Betty and her children, and their issue, living at her death.
The case of Coleman v. Seymore, 1 Vezey sen’r. 209, relied on by the Counsel for the appellants, has no direct application to the case now before the Court. The question in the case cited was, whether money legacies vested in the younger children then born, were subject to variation.. *56 as to amount, at the pleasure of the mother, in exclusion of those by a second marriage:.—the Lord Chancellor considered the intention to be to vest a present legacy in the children then born, in exclusion of those by the seJ cond marriage; but said, it might be different if the testator had given it to the mother for life, (as in the present case,) and afterwards to her younger children; because, then, it would have been a contingent interest, and a devise over. He said also that no general rule, in such cases, had been laid down; but that they had turned upon the particular words, the circumstances and views of the-testators.
The case of Jones v. Morgan, in 2 Fearne, has as little application. The devise over to T., in that case, would have been defeated, if the Court had not restricted the words, « any other son or sons of mine, thereafter to be “ born, as aforesaid,” to the sons of the first marriage. The rule has always been to restrict general words in a Will, if such restriction be necessary to effectuate the intention of the testator plainly deducible from some other part of it. In the case now before the Court, the estate is given to the mother for life, with a contingent interest to her children; as seems to have been deemed necessary, by the Lord Chancellor, if the children by the second marriage were to take, in the first case cited. Nor is it necessary, in the present case, to restrict the general words, in the devise to Betty and her children, to effectuate the intention as to James Littlepage her husband; because his interest was contingent, upon the death of his wife, and her children, and their issue, in his lifetime; upon which event, he would have taken the estate devised to him, as before remarked.
Judge Roane.
I regret that I have to differ in this case from all my colleagues. That regret is increased by a firm belief on my part, that my construction of the Will before us entirely accords with the intention of the testator. It accords, as I humbly conceive, with that intention, both as it is inferrable from general principles of construction, and from other parts of the Will; and as it depends on the particular clauses of the Will more immediately in question.
*57 In ascertaining what is the intention of the testator, upon the first ground above mentioned, I shall keep out of view, for the present, a critical examination of the clauses just alluded to. That belongs, more particularly, to the next head of enquiry. I shall only attempt to come at the testator’s meaning, by referring to other parts of his Will, and to general principles of construction, relating to the subject.
I take it to be one of those principles, that, altho’ a general presumption is sometimes made against a Will disinheriting the whole of a man’s progeny, no such presumption exists where apart of them, only, are excluded, in favour of others. In such cases, admitting the testator’s power of disposition, we are to enquire what the bequest really is. Ilis Will stands for a reason. We are free, in such cases, to array one part of his family against another, and to decide between them, as if they were indifferent persons, to what part of them the bequest really extends. If this be true in relation to a testator’s vMU dren, it will hold a fortiori, as to their children or remote descendants.
While we bear this principle in mind, we find that our testator has not provided for any of the children of his other daughters, whether of their then or future marriages.. He has sacrificed the interests of those daughters’ children, by giving the property absolutely to their mothers, which, of course, immediately vested in their husbands. The Will, therefore, shews no general intention in favour of the progeny of his daughters, in derogation of the rights of their husbands, which might extend its influence, also, into this case. Are there any particular circumstances applying to this daughter, (Mrs. Littlepage,) which would give a preference to her unborn issue of a future marriage, in this particular, and place them on higher ground than any of the issue of any of her sisters? There are none. She is not shewn to have been a particular favourite of the testator. There is, therefore, no greater hardship in his omitting to provide for the children of her f uture marriages, than in his failing to provide for all the issue of his other daughters. You can *58 not infer that to be the general intention of the testator, which, if it exists at all, exists only in one particular case.
What then was the object of the testator in the case before us? It was to abridge the marital rights of this husband (Mr. Littlepage;) and, as far as they are abridged, on a fair construction of the Will, he must submit to it. They are abridged in favour of his own children by his wife; but, subject to their contingent claim, his was a vested and transmissible interest. They are not abridged in favour of the children of Mrs. Littlepage’s future marriages, as I shall now attempt to shew. It never entered into the testator’s mind to provide for the children of such future marriages: they stand, in this particular, upon a common ground with the children of all his other daughters.
In considering this case, more particularly, under the two clauses of the Will now in question, it is to be remarked, that the construction is to be made upon the whole Will taken together. Every word is to have it’s effect: • every string is to give it’s proper sound. If a testator has used words, in even a former part of his Will, in too large a sense, he may restrain and qualify them in a latter: and if this be true in relation to distinct and finished clauses, it is much more true as to words comprehended in the same sentence. The testator ought, especially, to be permitted to explain such words as have scarcely escaped from his lips. In the case before us there is no contradiction to be reconciled, nor abridgment to be made, in relation to words found in different and distinct parts and clauses of the Will. We claim the clearer privilege of performing this office, as to words contained in the same sentence. We only ask that the testator may, himself, explain ambiguous words in the first part of a given sentence in his Will, by clearer words found in the last; that he may correct and abridge words, used in too large a sense in the first part of a given sentence, by more limited expressions contained in the last-We ask, in short, that, when the whole Will is to be looked into in forming a construction, such words, as are essentially explanatory and restrictive, may not be rejected.
*59 In the second clause of the Will before us, after giving one eighth part of his slaves to his (laughter Mrs. Little-page during her life, the testator gives it, immediately after her death, to " her children then living, and their legal representatives.” I do not say that these words, standing alone, would not extend to all the children of every marriage. On the other hand, I may affirm, that these words " her children,” may more naturally be restricted to the children of the then marriage, than if the words “all her children” had been there used: but, even in this last and stronger case, the words would readily have yielded to the restriction. These words, however, do not stand single. The testator goes on to say, "but " in case all her children should die in the life time of my “son-in-law James Littlepage, then the said slaves and "personal estate are to go to him.” Here the testator, after using the more comprehensive terms " all her children,” goes on to shew that he, nevertheless, does not mean any children hut those of the then marriage; for such only could by possibility die in Mr. Littlepage’$ life time. They could not die before they could come into existence. Altho’, therefore, the testator said “ all her children” in this place, he did not mean them all, but Only those of that particular marriage: and I presume it is the clear meaning of a testator we are to regard, and not his inaccurate expressions. If, too, the testator evidently meant the children of the then marriage, when, in the last part of the sentence in question, he used the more comprehensive phrase " all her children,” much more did he mean it in the first, where the word « children” only is used; and that is the part which more immediately contains the limitation under which the appellees claim.
The first clause of the Will, in relation to a negro girl, is substantially similar to the second, and must receive the same interpretation. In relation to both, my construction is supposed to be clear. It will be admitted on all hands, that if, after using the words “ her children,” or even “ all her children”, the testator had expunged them with his pen, and substituted the words " all her children by Mr. Littlepage; or if, without ex- *60 Pun^n§' ^iem? he had gone on to say, totidem verbis, that by those words he meant the last mentioned children only, the former words would have been restricted and exP^a^ned to mean those children only. The case can not be different when, instead of expressing his meaning by one or other of the above modes, the testator has so expressed it, by using a description which can not be otherwise satisfied. He could not have meant children horn after the death of Mr. Littlepage, and by another marriage, when, in the same breath, he considers them such as might die in his lifetime.
This construction, called for by the necessity of giving effect to all the testator’s expressions, is entirely analogous to one of the most common occurrence in the law.—• In the case of Hill v. Burrow, for example, (2 Call 342,) the devise was to T. H. and his heirs, but, in case he should die Without a lawful heir, then the land Was to go over to R. H. the brother of the devisee. These words « his heirs” were narrowed and pared down to mean heirs of the body only, by the last words used in the sentence, because the testator could not have meant heirs general, although he said so, for the devisee could not die without an heir whilst his brother was living, So, in the case of Sydnor v, Sydnor, 2 Munf. 263, the general words, to « A. and his heirs forever,” were narrowed to carry an estate tail only, from a subsequent provision in the Will, that, if he should die without heirs of his body, then the estate should go over. In both these cases, the general words in the first part of the Will were restrained and narrowed, so as to conform to the undoubted meaning of the testator,, as expressed in Hie last.
I do not deny that a testator may frame his Will upon a double aspect: as, in this case, he might have adapted it, 1st, to the event of his wife’s dying in Mr. Littlepage’s life time; and 2dly, to that of her surviving him and having issue by future marriages. But then this intention ought clearly to appear. We ought not to infer this second aspect, by garbling and suppressing a part of the testator’s expressions, and going upon a suppositipn, neither warranted by general principles, nor by any other provisions of thjs Will, that the testator could not have *61 intended to omit any of Ms daughter’s children. We ought not to adopt this construction by denying to the testator the common privilege of explaining or narrowing the meaning of an expression he had previously used. If we allow him that privilege, in the present case, there is no ground to say that the testator, in the clauses before us, contemplated the future children of Mrs. Lilllepage, more than those of his other daughters.
My opinion, therefore, is, that the Decree should be reversed, and bill dismissed. That, however, is not the opinion of the Court. Their opinion is, that the decree should be affirmed; and it is to be affirmed accordingly.
I understand it to he the opinion of the other judges, that, Lewis Littlepage having died without issue in the life time of his mother, those who claim under his Will are entitled to no part of this interest; and in that opinion I concur.

 Note. Chancellor Tayeor decreed a third part of the slaves in question, and of their profits, to each of the two children of Betty by -the second marriage, (who were the plaintiffs,'! and the remaining' third to the children oí Mary Coleman, who thereupon appealed.